UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAMMY CANTY,

       Plaintiff,

v.                                                                Case No. 8:21-cv-2387-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

       Defendant.
_____/

## ORDER

    Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

## I.

### A.    Procedural Background

    Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 762, 769). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 600, 607, 615, 631). Plaintiff then requested

---

[1] Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

an administrative hearing (Tr. 645). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 126–58). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 101–25).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–7). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**B.**     **Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1967, claimed disability beginning April 16, 2019[2] (Tr. 131, 762). Plaintiff obtained a high school education (Tr. 133). Plaintiff's past relevant work experience included work as a management trainee (Tr. 117). Plaintiff alleged disability due to "bi-polar, seizures, diabetes, pass out, [and] lower back" (Tr. 799).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through June 30, 2019 and had not engaged in substantial gainful activity since April 16, 2019, the alleged onset date (Tr. 106). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: obesity, diabetes mellitus, hypertension, bipolar disorder, asthma, sleep apnea, psychogenic seizures, hypothyroidism, lumbago, internal derangement of the right shoulder requiring

---

[2] Plaintiff listed May 1, 2015 as the alleged onset date in her application for supplemental security income (Tr. 769). However, Plaintiff's counsel confirmed April 16, 2019 was the alleged onset date at the hearing (Tr. 131).

corrective surgery, depressive disorder with anxiety, and migraine headaches (Tr. 106). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 107). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) with additional limitations. The claimant is limited to work with a sit-stand option that allows for a change of position at least every 30 minutes, which is a brief positional change lasting no more than three minutes at a time where the claimant remains at the workstation during the positional change. The claimant can lift and carry up to 20 pounds on an occasional basis and 10 pounds on a frequent basis, and can push and pull as much as she can lift and carry. The claimant can sit for six hours during the course of a workday, and stand and/or walk for six hours during the course of a workday. The claimant can frequently balance, stoop and crouch, and occasionally reach overhead with the right upper extremity, kneel, and climb ramps and stairs, but can never crawl, or climb ladders or scaffolds. The claimant must avoid unprotected heights, moving mechanical parts, the operation of a motor vehicle, have concentrated exposure to humidity, wetness, atmospheric conditions (dust, fumes and gasses), extreme cold, and extreme heat. The claimant is limited to routine and repetitive tasks, with a reasoning level of no more than two. The claimant can frequently interact with supervisors, co-workers and the public, and time off-task can be accommodated by normal breaks

(Tr. 109). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 111).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 117). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as Route Clerk, Marker II, or an Egg Candler (Tr. 118). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 119).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this

process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The ALJ, in part, decides Plaintiff's claim pursuant to regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the regulations and are commonly referred to as "the grids."  20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides

with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were

applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

## III.

Plaintiff argues that the ALJ erred by inadequately articulating his reasons for discrediting Plaintiff's testimony regarding her seizure activity. For the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In rendering the RFC, the ALJ considers medical opinions as well as all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e), 416.945(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded

observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii), 404.1545(a)(3), 416.929(c)(3)(i)–(vii), 416.945(a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). While the ALJ must consider the Plaintiff's medical condition as a whole, "[t]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citation omitted). Instead, the ALJ need only provide "enough to enable [this Court] to conclude that [the ALJ] considered [claimant's] medical condition as a whole." *Id.*

As indicated, in addition to the objective evidence of record, the ALJ must consider all the claimant's symptoms,[3] including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304, at *2. A claimant's statement as to pain or other symptoms shall not alone be

---

[3] The regulations define "symptoms" as a claimant's own description of his or her physical or mental impairment. 20 C.F.R. §§ 404.1502(i), 416.902(n).

conclusive evidence of disability. 42 U.S.C. § 423(d)(5)(A). Rather, consideration of a claimant's symptoms involves a two-step process, wherein the ALJ first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16-3p, 2017 WL 5180304, at *3–9. If the ALJ determines that an underlying physical or mental impairment could reasonably be expected to produce the claimant's symptoms, the ALJ evaluates the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2017 WL 5180304, at *3–9. When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225. A reviewing court will not disturb a clearly articulated finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam).

Here, Plaintiff challenges the ALJ's decision with regard to her seizures. At the hearing, Plaintiff stated that her seizures occur daily, last two to three seconds each, and they cause her to lose consciousness three times per week (Tr. 138–39). She stated that there are no triggers for her seizures and her only warning that a seizure is coming is that her heart "will start beating really fast" (Tr. 139). Plaintiff stated she had been on medication for the seizures, lithium, for three to four years

but it had been ineffective (Tr. 138). She stated her and her doctors were still working on a medication that would help reduce the frequency of the seizures and had not been able to identify the cause (Tr. 138–41). In the seizure questionnaire, Plaintiff alleges she began treatment for her seizures in 2014 (Tr. 827). Plaintiff stated that when she has a seizure, they last around one minute, and she is unconscious for four seconds (Tr. 828). She described them as like she has "a big hiccup" and then is "out for a few minutes" (Tr. 828). Afterwards, she reported she feels tired (Tr. 828). In contrast to her hearing testimony, she stated a trigger for the seizures is when she is "around a lot of people" (Tr. 828). She listed lamotrigine as her seizure medication (Tr. 827). In 2016, Deepak Tikku, MD, at the Neurology Center of Florida noted Plaintiff's history of pseudoseizures and that Xanax was effective in treating her symptoms (Tr. 957). Dr. Tikku noted that Plaintiff had a recurrence of her symptoms when she stopped taking Xanax (Tr. 957). In 2017, Dr. Tikku twice noted that Plaintiff's "pseudoseizures" were under good control with Xanax (Tr. 947, 950). In March, June, August, and December 2018, Dr. Tikku stated that Plaintiff "had multiple episodes of pseudoseizure events" while in the office but also noted that Plaintiff was taking Klonopin and Xanax and it "provided good benefit in controlling her episodes" (Tr. 933, 936, 939, 942). Dr. Tikku noted in March and May 2019 that Plaintiff had a history of pseudoseizures and anxiety disorder but "with Xanax .25 twice a day she is doing very well in controlling both the episodes" (Tr. 927, 930). Plaintiff began seeing Dr. Anoop K. Reddy in October 2019 for her seizures and he ordered a magnetic resonance imaging ("MRI") in

November 2019 (Tr. 1251, 1356). The MRI showed "[s]cattered T2 signal hypersensitivities in the white matter of both cerebral hemispheres" and noted that this "can be seen in patients with hypertension and/or diabetes" (Tr. 1356). In January 2020, Dr. Reddy concluded that Plaintiff's seizures appeared to be neurocardiogenic syncope because Plaintiff experienced a seizure during his taking of an electroencephalogram ("EEG") and there was "no convulsive activity in the background, nor was there any particular change in her cardiac rhythm" (Tr. 1241). In March 2020, Plaintiff began seeing a cardiologist at BayCare Medical Group, Dr. Jose Cura Jr., for an evaluation of her seizures and syncope (Tr. 1210). As she was leaving her initial appointment, she had a seizure and was transferred to St. Joseph's Hospital (Tr. 1085, 1210). Upon examination, Plaintiff's electrocardiograms ("EKG") were unremarkable (Tr. 1210). During this hospital stay, nursing staff heard Plaintiff make a "loud, gasping sound" and when they went to check on Plaintiff, she was staring at the ceiling and not responding to the nursing staff (Tr. 1210–11). Once responsive, Plaintiff stated her heart was racing, but the nurse noted her heart rate was 91 beats per minute, showed no arrhythmias, and her blood pressure was 133/77 mm/hg (Tr. 1211). Additionally, throughout this hospital stay, blood pressure, pulse, and rhythm were all normal (Tr. 1215). Plaintiff had another witnessed seizure during an EEG and again no abnormality was noted in her rhythm (Tr. 1215). Plaintiff also underwent a computerized tomography ("CT") scan in March 2020 which showed "no intracranial abnormality" (Tr. 1214). In May 2020, Dr. Cura, considered the test results and the witnessed seizures and

concluded that the seizures were likely psychogenic in nature (Tr. 1215).  In June 2020, Plaintiff was again hospitalized after she reported having four seizures but the healthcare provider noted that her EEG was "normal" (Tr. 288). In August 2020, a provider noted that Plaintiff "had [a] 'seizure like episode in clinic'" but had no postictal state after the episode ended and declined emergency transportation to the emergency room because "they 'told her she had to have 3 seizures in 1 day before she could go back to [the emergency room]'" (Tr. 270). In February 2021, Plaintiff stated her psychogenic seizures were getting worse despite her medication and was sent to the emergency room because while she was at another healthcare appointment she "had 7 'seizures' back-to-back and they would not stop" (Tr. 224).

The ALJ assessed this record and determined that Plaintiff's seizures were not disabling (Tr. 113).[4] In this task, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 111). In support of this, the ALJ noted that Plaintiff overall had

---

[4]  Before engaging in RFC analysis, the ALJ first determined that Plaintiff's symptoms did not qualify for analysis under Listing 11.02 for epilepsy (Tr. 113). *See* 20 C.F.R. Pt. 404, Subpt P, App. 1 § 11.01. Though no longer required for a finding of disabled under Listing 11.02, the ALJ also looked for evidence that a treating source concluded that frequent seizures are occurring despite anticonvulsant therapy (Tr. 113). *See* Rescission of Social Security Ruling 87-6; Policy Interpretation Ruling; Titles II and XVI: The Role of Prescribed Treatment in the Evaluation of Epilepsy, 82 FR 12485-01, 2017 WL 819635. Finding no such evidence, the ALJ then looked to whether the seizures were otherwise generally disabling by considering Plaintiff's subjective complaints and other record evidence.

normal results when it came to the radiological evidence (Tr. 113). The ALJ noted a January 2020 entry which observed that there was no evidence of convulsive activity nor any change in her cardiac rhythm as measured by an EKG (Tr. 113, 1349).  The ALJ cited to Plaintiff's normal CT scan and EKG in March 2020 which showed normal findings with the exception of mild concentric left ventricular hypertrophy (Tr. 113, 1214).  The ALJ also pointed to the November 2019 MRI which showed abnormalities associated with hypertension or diabetes, not seizures (Tr. 113, 1356). The ALJ considered Plaintiff's hospitalizations for seizures, other witnessed seizures, and a lack of radiological signs despite reporting seizure activity during multiple EEGs and two EKGs (Tr. 114, 1210, 1214–15, 1241, 1356). The ALJ specifically noted Dr. Cura's review of all of Plaintiff's telemetry strips, EKGs, and vital signs as well as his finding of no evidence of tachyarrhythmia (Tr. 114, 1210). The ALJ also acknowledged the witnessed seizure by the nursing staff, as well as the fact that Plaintiff reported a racing heartbeat, yet her heartrate was measured at 91 beats per minute and blood pressure at 133/77 mm/hg (Tr. 114, 1211). Thus, after considering the record, the ALJ concluded Plaintiff's seizures were not disabling (Tr. 114). While discounting Plaintiff's subjective complaints, the ALJ provided some limitations in the RFC to account for Plaintiff's hospitalizations (Tr. 114). Specifically, the ALJ provided that Plaintiff must avoid the climbing of ladders and scaffolds, and must avoid unprotected heights, moving mechanical parts, and the operation of a motor vehicle (Tr. 114). In this Court's review of the ALJ's decision it may not reweigh the evidence or substitute its own

judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178; *Bloodsworth,* 703 F.2d at 1239. This Court instead considers only whether the ALJ applied the correct law and is supported by substantial evidence. *Wilson*, 284 F.3d at 1221. The Court finds that, as demonstrated by the ALJ's analysis and this Court's review of the record, the ALJ articulated clearly his reasons for discounting Plaintiff's subjective complaints and those reasons are supported by substantial evidence.

Plaintiff's arguments to the contrary are unpersuasive. Importantly, Plaintiff does not cite any evidence in the record that the ALJ failed to consider or any point of law that the ALJ misapplied. Rather, Plaintiff's support for her position is that the ALJ's decision is "internally inconsistent" (Doc. 18, at 7). Plaintiff merely argues that the ALJ "points out that there is no objective evidence of claimant's seizures, supporting a conclusion that the claimant seizures are not disabling" yet "the decision finds that since the claimant had sought hospitalization for seizures, the claimant's history of seizures does result in limitations" (Doc. 18, at 7). Plaintiff cites no case law, statute, or regulation that would entitle her to remand based on this apparent internal inconsistency. Indeed, once the ALJ determined Plaintiff's mental and physical impairments were not as limiting as alleged, nothing required the ALJ to incorporate any additional limitations into the RFC or a hypothetical posed to the VE. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (holding the ALJ "was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported"); *Allen v. Barnhart*, 174 F. App'x 497, 499 (11th Cir. 2006) (holding the ALJ was not required to include limitations in the

14

hypothetical question where the ALJ had discredited the claimant's testimony which supported greater limitations). Without being required to do so because the ALJ validly discounted Plaintiff's subjective complaints, the ALJ incorporated limitations into the RFC because of Plaintiff's history of hospitalizations (Tr. 114). Even if this overinclusion were somehow error, Plaintiff would not be able to demonstrate it was harmful because Plaintiff would not have been prejudiced by this overinclusion. *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (stating that an error may be harmless when it does not prejudice a claimant). That the ALJ elected to include *more* limitations than required does not entitle Plaintiff to remand.

Second, Plaintiff's position is that "if she does have seizures" the seizures are "not adequately address[ed]" because, according to Plaintiff, the ALJ does not explain why he "discounted the Plaintiff's allegations that she experiences seizures 3 to 4 times per week, which last 2 to 3 seconds" and that "during those seizures, she experiences shaking and is incoherent for 2 to 3 seconds" (Doc. 18, at 7–8). Plaintiff does not elaborate further on this point and provides the Court no information on how Plaintiff alleges the ALJ erred. This is especially important because as outlined already the ALJ does explain why he discounted Plaintiff's subjective complaints. Plaintiff fails to raise any arguments as to that explanation's insufficiency.

Finally, it is unclear what limitation Plaintiff purports the ALJ should have included in the RFC to account for Plaintiff's seizures. The ALJ explicitly included limitations associated with Plaintiff's seizures, providing that Plaintiff must avoid

the climbing of ladders and scaffolds, unprotected heights, moving mechanical parts, and the operation of a motor vehicle (Doc. 18, at 7; Tr. 114). Indeed, Plaintiff concedes that these limitations were designed to address Plaintiff's seizures (Doc. 18, at 7). Instead, Plaintiff explains only that the seizures, even if they lasted a few seconds, "could be significantly disruptive" to the job of Egg Candler and the jobs of Marker II and Route Clerk "may also be precluded if claimant was having seizures 3 to 4 times per week where she was shaking and incoherent" (Doc. 18, at 8). Plaintiff alleges that "[a]ssuming the claimant['s] statements were true ... there is a reasonable possibility she would be precluded from the jobs identified by the vocational expert" due to the seizures, without explaining how the seizures would preclude her from performing those jobs and without explaining how the existing limitations did not already adequately address Plaintiff's alleged limitations (Doc. 18, at 8).

In sum, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178; *Bloodsworth,* 703 F.2d at 1239. The court instead considers only whether the ALJ applied the correct law and is supported by substantial evidence. *Wilson*, 284 F.3d at 1221. Here, the ALJ applied the correct law and was supported by substantial evidence. Accordingly, remand is unwarranted.

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

16

1.  The decision of the Commissioner is affirmed.

2.  The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 21st day of March, 2023.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record